BELL FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, *v.* HUBERT F. HORTON *et al.*, Defendants-Appellants.

Fifth District   No. 77-439

Opinion filed May 9, 1978.

924

Margaret Stapleton, of Land of Lincoln Legal Assistance Foundation, Inc., of East St. Louis, for appellants.

Frank T. Plattner, of Belleville, for appellee.

Mr. JUSTICE WINELAND delivered the opinion of the court:

FACTS:

Plaintiff-Appellee sought to foreclose a mortgage lien on certain real property owned by the defendants-appellants, Hubert F. Horton and Tangee S. Horton. The suit proceeded to a decree obtained by default since no pleading was filed by the defendants until after the decree for and sale of the foreclosed premises. The suit proceeded normally to a sheriff's sale at which plaintiff was the purchaser and to a deficiency judgment of $102.62 against the defendants. There is some question concerning the latter item, but the same does appear in the record as a valid judgment against the defendants.

Service of summons was not attempted in person but was by means of publication on the date of filing suit. Plaintiff through its attorney, Frank T. Plattner, filed at that time an affidavit stating *inter alia* that upon *due inquiry*, the defendants (naming them) cannot be found so that process cannot be served upon them, that upon diligent inquiry their last place of residence has been ascertained to be 416 North 56th Street, E. St. Louis, Illinois 62203. Said affidavit then proceeds in the usual and customary form to state that upon "due and diligent inquiry" it cannot be ascertained whether said defendants are living or dead, and if they or either of them be dead, they or their heirs or devisees cannot be ascertained, and they

are all therefore made parties by the name and description of "unknown owners."

Following the due and regular publication there was a regular certificate of mailing by the clerk of the court, which was not questioned in any way by the defendants.

According to the court's order directing the sale, interest and installments on the loan secured by the real estate mortgage were apparently paid by defendants up to September 1, 1975.

Sale of the premises to plaintiff by the sheriff was confirmed by decree of the trial court entered December 16, 1976. Thereafter, on July 5, 1977, the defendants entered their special appearance, claiming under section 20 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 20) that the attempted service by publication herein was defective and void and asking that said judgment be vacated.

Proceedings in the case were stayed by order of court pending the outcome of this appeal. The record shows there were no intervening claimants nor persons claiming rights as innocent purchasers of the premises.

OPINION

The question now before this court is not whether the defendants-appellants might have had knowledge of the pendency of this suit to foreclose. Rather, the question is, was plaintiff justified in resorting to service by publication and mailing in the first place? The answer requires not only that we examine somewhat at length the record in this case, but likewise the functional and historical significance of service of process in this State.

In this case the trial record shows that plaintiff's attorney filed an affidavit stating upon "due inquiry" the defendants cannot be found and further stating the last place of their residence to be 416 North 56th Street, E. St. Louis, Illinois 62203 (the place sought to be foreclosed under the complaint). Said affidavit further on discloses that upon "due and diligent inquiry" affiant cannot ascertain whether or not said defendants are living or dead, and if dead, then the persons who happen to be the unknown heirs or devisees of such defendants are made defendants by name and description of "Unknown Owners."

■■ According to the authorities which we have examined, most of which are reported herein, Illinois law contemplates that in order to resort to service by publication and mailing in that class of cases where permissible, there must be more than a cursory effort made by the plaintiff to locate the defendants. This is so that if possible service of process can be had in person. Otherwise, if properly challenged, an affidavit which attempts to show "due inquiry" or "due diligence" does

not speak the whole truth and service by such substituted means may not be resorted to.

On July 5, 1977, or some seven months after the sale by the sheriff to the plaintiff, the defendants filed their special and limited appearance, supported by affidavit of one of the defendants. In this pleading defendants set forth in substance that the real property in question was purchased by them in 1971, and that the defendant husband and wife have "resided at said address continuously since the end of 1971." They further state that they have a meritorious defense to the foreclosure (without stating what it consisted of). They also raise the question in this pleading of whether "due inquiry" was in fact made by stating that plaintiff's attorney knew or on due inquiry should have known that defendants resided at 416 North 56th Street, and should have obtained personal service upon them, as required by statute (citing pertinent sections of the relevant statute).

The trial court at this point ordered the plaintiff-appellee following a hearing on this special and limited appearance to file a counteraffidavit. Plaintiff, without questioning the conclusory nature of the defendants-appellants' pleading, did so. In the counteraffidavit which plaintiff's attorney made and filed as attorney for the plaintiff, he stated that "prior to filing the foreclosure action he ordered a title report and report of possession, and received a title report which stated, 'Property is vacant but appears to be habitable.' " This report was shown to have been made by Charles R. Jackson, representing Attorney's Title Guaranty Fund.

Based upon the evidence above set forth in the special pleading of the defendants and accompanying affidavit the trial court found that defendants' "Section 20 Motion to set aside and vacate the Order of Default entered herein is denied."

This is the order appealed from in this case.

Plaintiff-appellee concedes in this court that if said order entered in this case was in fact against the manifest weight of the evidence, it should be reversed and set aside.

This leads us to the nature and function of the law regarding process in a case of this kind.

The purpose of service of process is twofold. First, it serves the purpose of notice to those whose rights or immunities are about to be affected by the proposed action; secondly, it vests jurisdiction in the court over the persons whose rights are involved in the litigation.

■■ Jurisdiction of the person is said to be essential in all actions wherein personal or *quasi in rem* relief is required, such as in this case. Jurisdiction acquired by means of publication is only allowable in certain limited cases, and then only after strict compliance with the statutes governing such service.

Every defendant in an action filed against him in this State is entitled to receive the best possible notice of the pending suit and it is only where personal service of summons cannot be had, that substituted or constructive service may be permitted. (*Donath v. Donath*, (2d Dist. 1963), 42 Ill. App. 2d 327, 192 N.E. 299 (abstract).) Service to be effective must be by personal service unless designated otherwise by law. *Haj v. American Bottle Co.* (1913), 261 Ill. 362.

■■ While it is apparent that on its face the affidavit herein as to service by publication was valid, once challenged as it was here by the defendants it became incumbent upon the plaintiff-appellee to either successfully question the conclusory nature of the challenge or to produce evidence showing in fact that plaintiff had made "due inquiry" to locate the defendants so that process could be served upon them. Plaintiff elected to follow the course suggested by the trial court and filed a counteraffidavit in which he relied upon a title report prepared by a person who was not a sworn officer and who was not shown to be a person experienced in the service of process. The person preparing the title report reported that the real property "was vacant but appeared to be habitable." Apparently based on this meager report, the attorney for plaintiff felt justified in stating under oath that upon "due and diligent inquiry, it could not be ascertained whether the Defendants were living or dead," and the heirs or devisees of said defendants-appellants were, and also the defendants-appellants were, therefore made parties by the name and description of "unknown owners."

■■ This court finds that in order to make use of publication in a proper case and thus avoid the necessity for personal service upon a resident in this State it is required that something more than mere want of knowledge and lack of information concerning the defendants be shown.

"Due inquiry" and "diligent inquiry" are words of established legal significance. These two phrases have a well understood meaning that cannot be reconciled with the taking of a chance or guessing. (*Graham v. O'Connor* (1932), 350 Ill. 36, 41.) In order to justify the use of service by publication upon opposing parties it is requisite that something more be done than was shown by this record to have been done. Despite the burden which rested upon the plaintiff to sustain the proof of due inquiry and due diligence there is nothing shown to have been done by plaintiff to locate the defendants among the neighbors or to ascertain the place of employment of either of the defendants.

As was pointed out under the process by publication act then in effect (1880) "diligent inquiry" contemplated by the statute would require the defendant to make inquiries of her neighbors and others, who would probably be informed as to where her husband resided or could be found, and to pursue any leads thus obtained before she could truly make

the Affidavit required " 'that upon diligent inquiry the place of residence of the defendant could not be ascertained.' " *Hartung v. Hartung* (1880), 8 Ill. App. 156, 159.

Since the person preparing the title report in the present case did not testify below and there was no explanation for his absence we feel safe in assuming that no more than a cursory inquiry was made in this case preliminary to the filing of the affidavit for publication.

In *City of Chicago v. Leakas*, (1st Dist. 1972), 6 Ill. App. 3d 20, 27, the appellate court stated the applicable rule concerning due inquiry as follows:

> "The provision for 'due inquiry' is not intended as a *pro-forma* or useless phrase, requiring only perfunctory performance, but, on the contrary, requires an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry as full as circumstances can permit. (*Graham v. O'Connor*, 350 Ill. 36, 40-41, 182 N.E. 764, 766; *Romain v. Lambros*, 12 Ill. App. 2d 64, 68, 138 N.E.2d 704, 706.)"

In *Leakas*, which was a suit for demolition of defendant's building, plaintiff did not claim to have made any investigation to locate the owner. The record merely showed that the process server drove to the address for service on defendant and, without getting out of his car, concluded on the basis of what he saw from that substantial distance that the building was empty, drove away in a few seconds and reported that defendant was "not found." The *Leakas* court found that this hardly represented an inquiry at all, let alone "due inquiry." In *Leakas* we note there was no mailing of summons by the clerk as there was here.

The *Leakas* court then proceeded to hold however that since there was no well-directed effort attempted in that case, that therefore the affidavit of the corporation counsel which alleges "upon due inquiry defendant cannot be found" did not speak the whole truth. The statute being in derogation of the common law and requiring strict compliance, such a faulty affidavit failed to confer jurisdiction on the trial court over the property in question and the decree was therefore void.

*City of Chicago v. Moran* (1974), 17 Ill. App. 3d 515, 308 N.E.2d 324, presented a case where the plaintiff in a demolition suit instituted by the city of Chicago for some undisclosed reason stated the address of the owners to be a former residence to process the complaint rather than the correct legal residence which the department of buildings had discovered through its title search department. Also, the plaintiff failed to check the current telephone directory which would have correctly stated the residence address of at least one of the two defendants.

In line with the thinking expressed in *Leakas* and *Graham v. O'Connor* (1932), 350 Ill. 36, 182 N.E.2d 764, the court found that the "due inquiry"

affidavit was not only faulty but was void and failed to confer jurisdiction on the trial court over the property in question, and the demolition decree based thereon was void. Quoting from *Moran*:

> "For whatever reason, the City through its Law Department ignored this information and instead relied on the earlier * * * tax and title search to establish the addresses of defendants. This neglect or inadvertence, coupled with the fact that the correct addresses of all defendants could have been easily ascertained by merely consulting the then current Chicago telephone directory, leads us to the conclusion that due and diligent inquiry as to the whereabouts of the defendants had not in fact been made* * *. Therefore, the affidavit of the City that there had been due inquiry as to the whereabouts of defendants did not speak the whole truth. Owing to the faulty affidavit, the trial court lacked in rem jurisdiction to enter the order of demolition* * *. Therefore, the order of demolition is void, and, consequently, it was error to dismiss the defendants' counterclaim." 17 Ill. App. 3d 515, 520-21, 308 N.E.2d 324, 328.

In *Graham v. O'Connor* (1932), 350 Ill. 36, 40, it is made plain that the process of constructive service through publication is a concession of the law to the hard circumstances of necessity. The *Graham* court goes on to point out that "due inquiry" and "due diligence" are not intended as useless phrases but are put there for a purpose and then goes on to emphasize the rule stated in *Leakas* that a perfunctory inquiry does not comply with the provisions of the statute and that the inquiry must be as full as the circumstances of the particular situation will permit. In this case some five years had elapsed since the defendant had acquired a decree quieting title in her which decree was now being questioned in this suit by the plaintiff. She relied upon "due inquiry" and "due diligence" affidavits as a predicate for service by publication. The supreme court found that her affidavits fell far short of making the "due inquiry" and "diligent inquiry" required by the statute then existing. Consequently, her affidavits did not speak the whole truth. Therefore the court did not acquire jurisdiction over the complainants by constructive service based upon such affidavits and the proceedings had in the defendant's action were declared null and void.

■■ This court believes that the principles set forth in the *Moran, Leakas,* and *Graham* cases also govern us in this case.

Plaintiff cites the cases of *Zeve v. Levy* (1967), 37 Ill. 2d 404, and *In re Application of County Treasurer* (1967), 84 Ill. App. 2d 456, which are footnoted in the *Moran* case. Both cases involve tax deed proceedings instituted since the statute amendment of 1951, and would not be applicable here. Such cases since the 1951 amendment are governed by a

different rule of law. In this type of case it is not so much a question of "due inquiry" or "diligent search" as it is a question of establishment of fraud. (See *Zeve v. Levy*, 37 Ill. 2d 404, 407.) Also, the act of the General Assembly governing tax deed proceedings expressly provides that the act (ch. 120, par. 747) shall be liberally construed so that "tax deeds herein provided for shall convey merchantable title." Constructive service in other cases are governed by a different rule. Such statutes being in derogation of common law are strictly construed. *Boyland v. Boyland* (1857), 18 Ill. 551; *Corell v. Greider* (1910), 245 Ill. 378.

Plaintiff also contends that the defendants had actual notice of this proceeding by reason of the fact that the certificate of the clerk of the court shows mailing of notice of the pendency of the suit and contends by way of argument that this is proof of service, said mailings having not been returned.

Mailing of notice is a relevant part of the publication process. However, if the plaintiff was not justified in resorting to process by publication under section 14 of the Civil Practice Act in the first instance, how effective can the mailing of notice under that act be? Even though we assume *arguendo* that the defendants by reason of the notice mailed had actual knowledge of the proceeding in question, does this then suffice under the authorities cited?

■■ We doubt that this is so. The fact that defendants had actual knowledge of attempted service does not render the service effectual if in fact the process was not served in accordance with the requirements of the statute. *Berryhill v. Sepp* (1909), 106 Minn. 458, 119 N.W. 404.

It was contended in a suit involving service outside this State that the defendant had actual knowledge of the suit against him, therefore even though service was not perfected, that jurisdiction to render judgment existed. It was held in this case, however, that even though defendant had knowledge of the pendency of the suit, this "so far as we are advised has [never] been deemed equivalent to service of summons." *Newman v. Greeley State Bank*, 92 Ill. App. 638, 642.

We conclude this opinion by stating that: The attempted service in this case was incapable of vesting jurisdiction over defendants as to the property involved. The affidavit preliminary to service by publication over defendants did not speak the whole truth as to "due inquiry" and as to "due diligence." Since it did not speak the whole truth, therefore service by publication could not be predicated thereon and the attempted service was void as to defendants.

Because of the limited nature of this appeal, *i.e.*, from an order of denial of defendants' special and limited appearance and refusal to set aside the default judgment, we feel persuaded at this point to note that the cases of courts of appeal passing upon like questions speak of the

judgments obtained by means of faulty process, as being void, when in fact they in truth mean voidable. A judgment obtained, for instance where there was no service at all upon the opposing party would be a void judgment but in this case there was a difference, the difference being that on its face, the service here by publication was valid and it was necessary that action be taken by the defendants to make it otherwise. By taking the action which they have we hold that the defendants have rendered the judgment of default underlying the subsequent foreclosure and sale of the premises, void as to them but we refrain from exercising our powers under Rule 366(a)(5) of the Supreme Court (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5)) and going beyond this point since it is most obvious to the court that some further action will be required in order to set aside the proceedings subsequent to the order of default. If so, this should be in our opinion without court cost to these defendants and no attorney fees should be assessed against the defendants under the terms of the mortgage for the court proceedings which have occurred to this point.

The finding of the trial court in respect to the question appealed is found to be against the manifest weight of the evidence insofar as it finds that said court had jurisdiction by the service of process attempted and said cause is reversed and remanded for further proceedings in conformity with this opinion.

Reversed and remanded.

JONES and G. J. MORAN, JJ., concur.